United States District Court
District of Massachusetts

_____
                                )
PETER SANTANGELO,               )
                                )
          Plaintiff,            )
                                )    Civil Action No.
          v.                    )    12-11295-NMG
                                )
NEW YORK LIFE INSURANCE COMPANY, )
                                )
          Defendant.            )
_____)

## MEMORANDUM & ORDER

GORTON, J.

This case arises from the termination of a Field Underwriters Contract pursuant to which plaintiff Peter Santangelo ("plaintiff" or "Santangelo") sold insurance policies for over 35 years on behalf of defendant New York Life Insurance Company ("defendant" or "NYLIC"). Plaintiff asserts numerous contract-based claims against defendant and, more recently, has amended his pleadings to assert claims of age discrimination under the Americans with Disability Act and the Massachusetts Anti-Discrimination Statute.

Defendant moves for summary judgment on all claims asserted in two separate complaints. For the reasons that follow, defendant's motions will be allowed and judgment will enter in favor of defendant on all pending claims.

## I.  **Background**

### A.  **Nature of Plaintiff's Relationship With NYLIC**

In September, 1968, Santangelo entered into a Field Underwriter's Contract ("the Contract") with NYLIC.  The Contract authorized him to act as an Agent of NYLIC and sell its products.  The Contract provided that

> Neither the term 'Field Underwriter' ... nor anything contained herein or in any of the rules or regulations of [NYLIC] shall be construed as creating the relationship of employer and employee between [NYLIC] and the Field Underwriter.  Subject to the provisions hereof and within the scope of authority hereby granted, the Field Underwriter, as an independent contractor, shall be free to exercise his own discretion and judgment with respect to the persons from whom he will solicit applications, and with respect to the time, place, method and manner of solicitation and of performance hereunder.  But the Field Underwriter agrees that he will not conduct himself in such a manner as to affect adversely the good standing or reputation of [NYLIC].

Field Underwriter's Contract, Docket No. 102, Ex. 1, ¶ 5.  Both parties had the right to terminate the Contract with or without cause on 30 days notice. Id. ¶ 9.

NYLIC contracts with two kinds of Agents: Training Allowance Subsidy Agents ("TAS Agents") and Established Agents.  TAS Agents are agents who have worked in the life insurance industry for no more than three years.  They receive intensive training and ongoing support from NYLIC and NYLIC considers them to be employees of NYLIC.  After three years, TAS Agents become Established Agents.

At the time he was terminated, plaintiff had served as an Established Agent for over 30 years.  As an Established Agent, plaintiff had total discretion over which clients to solicit. Occasionally NYLIC would refer potential clients to him and he would accept the clients to show NYLIC that he was interested in receiving referrals in the future.  Plaintiff also decided when and where to meet prospective clients and what sales pitch he would employ.  He was licensed in Maine, New Hampshire, Rhode Island, New York, Ohio, California and Massachusetts and therefore was limited to soliciting business within those states.  He was also not permitted by NYLIC to sell certain kinds of policies, including indexed annuities and "stranger-owned life insurance policies."

Plaintiff set his own schedule.  He did not report to NYLIC on a daily basis and was not required to spend 40 hours per week selling NYLIC products although NYLIC did expect him to meet certain sales goals.  He had to attend one training annually and attended other non-mandatory "sales meetings" on an irregular basis.  He cannot recall any regular meetings with management at NYLIC other than meetings about his alleged non-compliance with NYLIC policy late in his tenure.

Plaintiff did not receive a salary from NYLIC and was instead compensated solely through sales-based commissions. Plaintiff did not receive medical leave or vacation leave from

NYLIC. NYLIC did not withhold state or federal income from its payment of commissions to plaintiff. Along with NYLIC products, he sold the products of SB Life Insurance Company, John Hancock, Guardian, and Blue Cross and Blue Shield and received commissions for his sales from those companies.

Plaintiff had the option to sell NYLIC products out of his home but instead chose to rent office space at a building rented by NYLIC in Waltham. He bought his own office supplies and furniture and was free to hire, at his own expense, clerical staff or assistants to help him sell insurance products, subject to a background check of any candidate by NYLIC. His ingoing and outgoing mail was monitored by NYLIC and he was required to submit proposed correspondence to the Compliance Department for approval. Had plaintiff chosen to work from home or from a non-NYLIC building, he would have been required to post appropriate signage, report all incoming mail to NYLIC and allow NYLIC to regularly review his files.

### B. Termination of Plaintiff by NYLIC

NYLIC Agents are not permitted to ask their customers to sign blank forms or to retain blank forms signed by customers in customer files. NYLIC monitors compliance with that policy and otherwise supervises its Agents through mandatory, unannounced, annual face-to-face supervisory interviews and inspections of Agents and their customer files.

John Quarella, Jr. ("Quarella"), a Senior Agency Standards Consultant for NYLIC, conducted several such reviews of plaintiff and his files between 2006 and 2008. In July, 2006, Quarella discovered two forms in plaintiff's files that were signed by the customers but otherwise incomplete. Quarella discussed the violation with plaintiff and, in September, 2006, NYLIC issued to plaintiff a "Letter of Reprimand".

In September, 2007, Quarella conducted another annual review of plaintiff's files and discovered three signed but otherwise incomplete forms. Quarella discussed his findings with plaintiff and informed him that he could be terminated if he continued to violate company policy. In March, 2008, NYLIC issued a "Letter of Severe Reprimand" based upon plaintiff's repeated violations of company policy.

In April, 2008, NYLIC decided to place plaintiff under "Enhanced Supervision" during which he would be subjected to additional unannounced reviews. Plaintiff contends that he was unaware that he was under "Enhanced Supervision" but admits that he knew that he was being subjected to more frequent reviews and supervised more closely than in the past. He states that it was NYLIC policy to provide Agents who were placed on Enhanced Supervision status with extra training but notes that he was not offered and did not receive such training.

During an unannounced review in December, 2008, Quarella discovered signed but otherwise incomplete forms in two files. "Zone Agency Standards Officer" James A. Robertson III ("Robertson") met with Quarella and plaintiff and later recommended that plaintiff be terminated.

On April 1, 2009, plaintiff received a letter from the NYLIC human resources department dated March 27, 2009. The letter referenced his upcoming retirement on May 1, 2009 and discussed the benefits he stood to receive under the NYLIC Retirement Plan. Plaintiff called the human resources department to inquire about the letter the following day.

On the same day, April 2, 2009, plaintiff received by facsimile a letter dated the preceding day notifying him of his termination. The letter stated that his Contract would be terminated on May 1, 2009 and did not state the reason for his termination. Plaintiff claims that he did not receive a justification for his termination until December, 2009.

## C. Denial of Access to Office Space and Files

Despite the fact that the letter stated that the termination would become effective on May 1, 2009, NYLIC deactivated plaintiff's key-card so that he could not access his office space in the NYLIC building in Waltham, Massachusetts and permanently disconnected him from its computer network beginning on April 7, 2009. He continued to pay rent for use of the

office space through May 31, 2009 despite being unable to access the property.  On May 6, 2009, defendant issued a cease and desist order that threatened plaintiff with criminal prosecution if he tried to access his office.  Plaintiff contends that he asked several times to have his desk, chair, bookshelf, filing cabinet and "book of business" returned to him but that property was never returned.

Plaintiff asserts that at the time he was terminated and for the next several years, the defendant hired hundreds of younger agents into plaintiff's "agent pool" and none of the new hires had as much experience with plaintiff.  His Amended Complaint does not, however, contain any specific information about the age or identity of any new hires or whether any were hired to replace him.  He also contends that he did not deserve to be issued Letters of Reprimand and that the fact that he received such letters is evidence of defendant's discriminatory animus and intent to use plaintiff's "book of business" to aid the young agents it hired subsequent to his termination.

### D.    Eligibility for Retirement Benefits

Plaintiff was put on "retired-terminated-active" status following his termination and was therefore eligible to receive retirement benefits under the NYLIC Retirement Plan, a defined benefit pension plan for NYLIC Agents.  He continues to receive

certain retirement benefits including retirement income and is covered the NYLIC medical and dental plans.

At the time of his termination, plaintiff was informally classified as an "N6 Agent" which meant that he contracted to become an insurance agent with NYLIC between 1964 and 1991. Plaintiff also contracted for a certain compensation arrangement that is available to N6 Agents known as the "Nylic Contract". That contract made plaintiff eligible to receive "Senior Nylic Income" after 20 years of service and an increase in his level of compensation every five years thereafter that he remained employed as an Agent.

Agents who met certain qualifications are also eligible for "Supplemental Senior Nylic Income" ("SSNI"). The SSNI program entitles qualified Agents to receive increases in compensation every five years after terminating their Nylic Contracts. The terms of the SSNI program are governed by the SSNI Booklet provided to plaintiff during his tenure with NYLIC. To be eligible for SSNI, an agent must serve at least 30 years under an Agent's Contract and be in a position to elect a "Retired Agent's Contract" upon retiring from NYLIC. Retired Agents who elect to operate under an active Retired Agent's Contract are permitted to continue to conduct business for NYLIC. To be eligible for such a contract, an Agent must be in good standing with NYLIC. An agent whose Contract is terminated for

violations of company policy is not in good standing and is therefore ineligible for a Retired Agent's Contract.

Because plaintiff was allegedly terminated for violating company policy, NYLIC takes the position that plaintiff is ineligible for an active Retired Agent's Contract and therefore is also ineligible to receive SSNI income.

## II. **Procedural History**

On December 15, 2009, plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") in which he alleged age discrimination under M.G.L. ch. 151B and the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 ("the ADEA"). More than two years later, n February, 2012, MCAD determined that plaintiff had failed to demonstrate probable cause that defendant had discriminated against him on the basis of his age.

Plaintiff subsequently filed an action for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment and quantum meruit ("the Original Complaint") in the Middlesex County Department of the Massachusetts Superior Court in March, 2012. Defendant removed the action to this Court in July, 2012 and moved for summary judgment on the Original Complaint in October, 2013.

In January, 2014, plaintiff, acting pro se, filed a second action against defendant in which he alleged that he was unlawfully terminated because of his age.  The Court consolidated the two cases following a status conference in February, 2014 at which time plaintiff's counsel agreed to represent plaintiff in the consolidated action.

Shortly thereafter, plaintiff's counsel filed a Verified Amended Complaint ("the Amended Complaint").  The Amended Complaint claims that plaintiff is entitled to relief pursuant to the ADEA, M.G.L. ch. 151B, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17 ("Title VII") and the Civil Rights Act of 1991, Pub. L. No. 102-66, 105 Stat. 1071.  Plaintiff seeks: return of his property (Count I), reinstatement of his contract (Count II), money damages for lost wages, commissions and benefits (Count III), reimbursement of the costs of renting office space and paying utility bills during May, 2009 after his termination (Count IV), punitive damages (Count V) and attorneys' fees and costs (Count VI).

An amended complaint normally supersedes the original complaint and the earlier complaint "is a dead letter and no longer performs any function in the case." Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008) (citations omitted). Thus, the failure of plaintiff's counsel to include the contractual and quasi-contractual claims raised in the Original

-10-

Complaint in the more recent Amended Complaint would normally operate as a waiver of those claims. Nevertheless, the Court recognizes that the new claims were added to this case under unusual circumstances and defers to the apparent agreement of the parties that the Original Complaint remains operative.

Defendant moved to dismiss the Amended Complaint in March, 2014. In May, 2014, plaintiff filed a Notice of Voluntary Dismissal of Count I of the Amended Complaint and all claims arising under Title VII. In June, 2014, defendant moved for summary judgment on all claims asserted in the Amended Complaint.

## III. **Motions for Summary Judgment**

Defendant has moved for summary judgment on the contract-based claims asserted in the Original Complaint and the discrimination claims asserted in the Amended Complaint.

### A. **Summary Judgment Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that

-11-

the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the
suit under the governing law." Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986). A genuine issue of material fact
exists where the evidence with respect to the material fact in
dispute "is such that a reasonable jury could return a verdict
for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts
to the non-moving party to set forth specific facts showing that
there is a genuine, triable issue. Celotex Corp. v. Catrett, 477
U.S. 317, 324 (1986). The Court must view the entire record in
the light most favorable to the non-moving party and make all
reasonable inferences in that party's favor. O'Connor v.
Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is
appropriate if, after viewing the record in the non-moving
party's favor, the Court determines that no genuine issue of
material fact exists and that the moving party is entitled to
judgment as a matter of law.

**B.  Claims in Original Complaint**

**1.  Breach of Contract (Count I)**

Count I of the Original Complaint alleges that defendant
breached the Contract by wrongfully denying SSNI income to
plaintiff. To prevail on that claim under Massachusetts law,

-12-

plaintiff must prove that 1) a valid, binding contract existed, 2) NYLIC breached the terms of the contract and 3) plaintiff sustained damages as a result of the breach. <u>Young</u> v. <u>Wells Fargo Bank, N.A.</u>, 717 F.3d 224, 232 (1st Cir. 2013).

Defendant contends, and the Court agrees, that plaintiff cannot show that NYLIC breached the terms of the subject Contract. Plaintiff's Contract with NYLIC and the terms of the SSNI Booklet establish that plaintiff would be entitled to SSNI only if he were eligible to elect an active Retired Agent's Contract. Thus, plaintiff's assertion that he <u>would have</u> elected to operate under a Retired Agent's Contract had he been able to access his computer between April 1, 2009 and May 1, 2009 is a non sequitur. Even if plaintiff had access to his computer during that entire period, he would not have been eligible to elect such a contract and therefore was ineligible for SSNI. He points to no other contractual provision that would entitle him to such benefits. As a result, defendant is entitled to summary judgment on Count I.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)

Count II alleges that NYLIC breached the implied covenant of good faith and fair dealing by wrongfully denying plaintiff SSNI income. "The covenant of good faith and fair dealing is implied in every contract." <u>Uno Rests., Inc.</u> v. <u>Bos. Kenmore</u>

-13-

Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004) (citing Kerrigan v. Boston, 278 N.E.2d 387 (Mass. 1972)).  It provides that

> neither party shall do anything that will have the
> effect of destroying or injuring the right of the
> other party to receive the fruits of the contract.

Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991).  The covenant is intended to guarantee that "the parties remain faithful to [their] intended and agreed expectations" but it does not create rights "not otherwise provided for in the existing contractual relationship." Uno Rests., 805 N.E.2d at 964 (citations omitted).

Count II presents a closer case than Count I because the facts viewed in the light most favorable to plaintiff establish that defendant was clumsy, if not incompetent, in its handling of plaintiff's termination.  Its error in mailing plaintiff a letter about his upcoming "retirement" before he was notified that he had been terminated is egregious.  Nevertheless, the facts do not support the inference that defendant acted in bad faith or engaged in unfair dealing in order to deny SSNI income to plaintiff.  See Am. Paper Recycling Corp. v. IHC Corp., 775 F. Supp. 2d 322, 330 n.8 (D. Mass. 2011).  The record is replete with evidence that plaintiff received multiple warnings before he was terminated and was terminated only after several discussions with Quarella and a final meeting with Quarella and Robertson.  While plaintiff is correct that NYLIC made several

-14-

administrative errors such as mailing plaintiff a letter about his upcoming "retirement" and sending his termination letter by facsimile rather than hand-delivery, such errors do not support the inference that NYLIC orchestrated plaintiff's termination to deny him SSNI.

### 3.    Promissory Estoppel (Count III)

Count III claims that defendant is estopped from denying plaintiff SSNI income because, according to plaintiff,

> Defendant promised the Plaintiff that it would allow the Plaintiff to elect to receive SSNI upon his retirement should he complete thirty (30) years of service to the Defendant and be awarded a NYLIC "N6" Agent Contract.

To prevail, plaintiff must establish that NYLIC made an unambiguous promise to pay him SSNI income and that he reasonably relied upon that promise. See R.I. Hosp. Trust Nat'l Bank v. Varadian, 647 N.E.2d 1174, 1179 (Mass. 1995).

Based upon the undisputed facts in the record, defendant is entitled to judgment as a matter of law on that claim. Plaintiff does not seriously dispute that his entitlement to SSNI depended upon the terms of his Contract with NYLIC and the SSNI Booklet and he does not contend that anyone made an oral promise to him that the usual requirements for obtaining SSNI would be waived in his case.  Thus, he is unable to demonstrate an unambiguous promise to pay him SSNI income based solely upon the length of tenure or his pre-termination Contract.

-15-

### 4.   Unjust Enrichment (Count IV)

Count IV alleges that defendant was unjustly enriched by failing to compensate plaintiff in full for the benefits it received from plaintiff.  That claim also fails because there is no genuine dispute that plaintiff's entitlement to SSNI is governed by the terms of his written contract and Massachusetts law precludes plaintiff from seeking relief in equity based upon a valid written contract. See, e.g., Biltcliffe v. CitiMortgage, Inc., 952 F. Supp. 2d 371, 380-81 (D. Mass. 2013).

### 5.   Quantum Meruit (Count V)

Count V, which states a theory of recovery in quantum meruit, fails for the same reason.  Massachusetts law bars recovery on a theory of quantum meruit where there is a "valid contract that defines the obligations of the parties." Bos. Med. Ctr. Corp. v. Sec'y of Exec. Office of Health & Human Servs., 974 N.E.2d 1114, 1131-32 (Mass. 2012).

### C.   Claims in Amended Complaint

### 1.   Status as Employee or Independent Contractor

Defendant asserts that plaintiff cannot prevail on his claims of age discrimination because he was an independent contractor and, as such, is not protected by the ADEA or Chapter 151B. See Speen v. Crown Clothing Corp., 102 F.3d 625, 628-29 (1st Cir. 1996) ("[T]he federal and Massachusetts statutes

prohibiting age discrimination in employment do not reach independent contractors.").

### a. Legal Standard

Courts in Massachusetts and the First Circuit determine whether a party is an employee or independent contractor based upon "traditional agency law principles." Speen, 102 F.3d at 631. Those principles apply equally to claims brought under the federal ADEA and the Massachusetts Anti-Discrimination Statute. See id. at 627-34.

In general, whether one is found to be an employee or independent contractor under those statutes depends upon whether the hiring party has a "right to control the manner and means by which the product is accomplished." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992) (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989)). Factors relevant to that inquiry include

> the skill required; the source of the instrumentalities and the tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hiring party.

Id. (quoting Reid, 490 U.S. at 751-52).  All of the factors must
be weighed and no single factor is dispositive.  Id. (citing
N.L.R.B. v. United Ins. Co. of Am., 390 U.S. 254, 258 (1968)).

     Where there are no genuine, disputed issues of material
fact, a court may decide whether an individual is classified as
an employee or independent contractor as a matter of law on
summary judgment where the Darden factors

     point so favorably in one direction that a fact finder
     could not reasonably reach the opposite conclusion.

Alberty-Vélez v. Corporación de P.R. Para La Difusión Pública,
361 F.3d 1, 7 (1st Cir. 2004).

### b.  Analysis

     Based upon the Darden factors, plaintiff is clearly an
independent contractor, not an employee.  Most importantly,
there is no genuine dispute that plaintiff controlled the
"manner and means" of his work as an insurance agent.  Darden,
503 U.S. at 323.  He admits that he arranged his own meetings
with clients, determined his own sales strategy and could sell
products in any state in which he was licensed.  He worked
whatever hours he felt were appropriate on a given day and was
not required to report to NYLIC on a daily basis.  He did not
have regularly scheduled meetings outside of the one annual
sales training.  Plaintiff rented his own office space and
bought his own supplies and office furniture.  He was paid a

-18-

commission rather than a salary and NYLIC did not withhold any
state or federal taxes from his commissions.  He did not receive
medical leave or vacation leave.  He was free to sell the
products of other life insurance companies and did so during the
time he had a contract with NYLIC. See id. at 323-24; see also
Murray v. Principal Fin. Grp., Inc., 613 F.3d 943, 944-45 (9th
Cir. 2010) ("We, along with virtually every other Circuit to
consider similar issues, have held that insurance agents are
independent contractors and not employees for purposes of
various federal employment statutes [including the ADEA].");
Barnhart v. N.Y. Life Ins. Co., 141 F.3d 1310, 1313 (9th Cir.
1998) (finding that NYLIC agent was an independent contractor
for the purposes of the ADEA).

    The fact that NYLIC would sometimes refer potential clients
to plaintiff does not alter the foregoing conclusion.  Plaintiff
avers that he felt pressure to accept such clients so that he
would continue to receive referrals.  He does not state,
however, the extent to which he and other Agents relied upon
referrals for their commissions.  Without more, that assertion
does not support the inference that NYLIC exercised de facto
control over his solicitation of business.

    Similarly, the fact that NYLIC placed certain restrictions
on his sales activities is not dispositive of whether NYLIC
exercised the requisite "control" over the manner or means of

his work. <u>Darden</u>, 503 U.S. at 323.  A company does not exercise
the requisite control necessary to create an employer-employee
relationship merely because it restricts the manner or means of
their work in order to comply with statutory and regulatory
requirements. <u>See, e.g.</u>, <u>Taylor</u> v. <u>Waddell & Reed, Inc.</u>, No. 09-
02909, 2013 WL 435907, at *6 & n.27 (S.D. Cal. Feb. 1, 2013)
(explaining that compliance of a financial services company with
restrictions mandated by the Financial Industry Regulatory
Authority, Inc. and the Securities and Exchange Commission did
not suggest that it had the requisite control over financial
advisors that sold its products).  Here, NYLIC asserts that its
rules against selling certain annuities, requirements with
respect to background checks of assistants and signage and
review of his correspondence and sales documents were all
mandated by state and federal law or rules promulgated by the
Financial Industry Regulatory Authority and its predecessor, the
National Association of Securities Dealers.  Even if NYLIC is
incorrect or mistaken as to those requirements, moreover, none
of the restrictions identified by plaintiff outweigh the
overwhelming evidence that he was an independent contractor of
NYLIC.

Finally, the Court gives no weight to the fact that the
Massachusetts Department of Unemployment Assistance found that
plaintiff was an employee and therefore entitled to unemployment

insurance benefits under M.G.L. ch. 151A.  The test for who is
an employee eligible for unemployment benefits under M.G.L. ch.
151A, is different than the "traditional agency law principles"
applied to determine if someone is an employee for the purposes
of asserting a claim of discrimination under the ADEA and M.G.L.
ch. 151B.  See Athol Daily News v. Bd. of Review of Div. of Emp't
& Training, 786 N.E.2d 365, 369-70 (Mass. 2003) (describing test
for eligibility of unemployment insurance benefits under M.G.L.
ch. 151A).

Thus, while a few factors weigh in favor of finding that
plaintiff was an employee, such as his lengthy contractual
relationship with NYLIC and his uncorroborated assertion that
NYLIC did not allow him to retrieve certain belongings after
terminating his Contract, a reasonable jury could only conclude
that plaintiff was an independent contractor of NYLIC. Alberty-
Vélez, 361 F.3d at 7.

### 2.   Other Grounds for Summary Judgment

Because the Court finds that plaintiff was an independent
contractor rather than an employee, it declines to address
whether defendant is entitled to summary judgment on the grounds
that plaintiff has proffered insufficient evidence of pretext or
that his claims are barred by the statute of limitations and the
equitable doctrine of laches.

<u>**ORDER**</u>

For the foregoing reasons,

1) defendant's motion for summary judgment (Docket No. 41) is **ALLOWED** and all claims asserted in the Complaint filed on March 30, 2012 (Docket No. 1, Ex. 1) are **DISMISSED;**

2) defendant's motion for summary judgment (Docket No. 99) is **ALLOWED** and all claims raised in the Amended Verified Complaint (Docket No. 87) are **DISMISSED;**

3) defendant's motion to strike portions of the affidavit of plaintiff (Docket No. 62) is **DENIED AS MOOT;**

4) defendant's motion to strike portions of plaintiff's response to defendant's statement of undisputed material facts (Docket No. 64) is **DENIED AS MOOT;**

5) defendant's motion to dismiss (Docket No. 88) is **DENIED AS MOOT;** and

5) the parties' joint motion for clarification regarding pending motion for summary judgment (Docket No. 96) is **DENIED AS MOOT.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 7, 2014